UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                    CRIMINAL NO. 3:11-CR-67-DPJ-LRA

LEE EARL BROOKS, JR.

ORDER

Defendant Lee Earl Brooks, Jr., asks the Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

I.      Facts and Procedural History

On September 8, 2011, a grand jury indicted Brooks on two drug-trafficking charges. On March 20, 2012, the grand jury returned a superseding indictment charging Brooks with four drug-trafficking counts. Brooks was tried by a jury in October 2012 and convicted on all four counts. On January 15, 2013, the Court sentenced Brooks to a 211-month term of incarceration. Following a retroactive amendment to the applicable guideline sentencing range, the Court modified Brooks's sentence down to a 181-month term of incarceration.

Brooks, a 41-year old African-American male, is serving his term of incarceration at the low-security facility in Beaumont, Texas (FCI Beaumont Low). According to the Bureau of Prisons website, his projected release date is September 21, 2025. Fearing he may contract COVID-19 if he remains incarcerated, Brooks asks the Court for compassionate release.[1]

II.     Analysis

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

---

[1] As of September 16, 2020, one inmate and one staff member at FCI Beaumont Low have active cases of COVID-19. A total of 486 inmates and three staff members there have recovered from the virus.

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

While Brooks had not exhausted as required by the statute when he filed his motion, he has since filed a request for compassionate release with the director of BOP, which was denied.  The Court thus assumes that Brooks has exhausted.  So the sole question is whether, "considering the factors set forth in [§] 3553(a)," "extraordinary and compelling reasons warrant" a reduction in Emmons's sentence, "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

In a slightly different context, the Supreme Court found the Sentencing Commission's applicable policy statements binding on district courts.  *See Dillon v. United States*, 560 U.S. 817, 830 (2010) (considering § 3582(c)(2), which permits a sentence reduction where the applicable guideline range has been lowered "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").  But the question is whether there is presently an applicable policy statement because "[t]he Sentencing Commission has not issued a relevant policy statement since 18 U.S.C. § 3582(c)(1)(A) was amended to permit defendants to file motions for compassionate release" on their own behalves.  *United States v. Woods*, No. 1:17-CR-118-LG-JCG, 2020 WL 3452984, at *2 (S.D. Miss. June 24, 2020).

Many courts continue to follow the prior policy statement, United States Sentencing Guideline § 1B1.13, but some do not.  *Compare id.* (citing *United States v. York*, Nos. 3:11-CR-

76, 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (holding that "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction")), *with United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019) (concluding after amendment of § 3582(c)(1)(A) that "the Director's prior 'interpretation of "extraordinary and compelling" reasons is informative,' but not dispositive" (quoting *United States v. Adams*, No. 6:94-CR-302, 2019 WL 3751745, at *3 (M.D.N.C. Aug. 8, 2019))).

It seems at least noteworthy that courts "presume that Congress is aware of existing law when it passes legislation." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) (citation omitted). And that seems doubly true when Congress expressly incorporates that law into a new statute. If Congress thought § 1B1.13 was a bad fit when it amended § 3582(c)(1)(A) in the First Step Act, it probably would not have incorporated it by reference. Still, there is no binding precedent or clarity on this issue. Absent binding authority indicating that the Court should disregard § 1B1.13, the Court agrees with Judge Guirola that "[r]egardless of whether the policy statement remains binding, it continues to provide helpful guidance for determining whether a defendant is entitled to compassionate release." *Woods*, 2020 WL 3452984, at *2.[2]

Section 1B1.13 "essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant 'not be a danger to the safety of any other person or to the community.'" *United States v. Dunlap*, No. 1:02-CR-165, 2020 WL 2062311, at *1 (M.D.N.C. Apr. 29, 2020) (quoting U.S.S.G. § 1B1.13(2)). The application notes to § 1B1.13

---

[2] A district court in North Carolina surmised that "[a]s the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely that there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future." *United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019).

provide examples of extraordinary and compelling reasons to grant a compassionate release.

Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant --
>
> (i) The defendant is suffering from a terminal illness[.]
>
> (ii) The defendant is [suffering from a health condition] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B)  Age of the Defendant -- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C)  Family Circumstances --
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D)  Other reasons -- As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1.

Brooks does not contend that his situation is extraordinary or compelling under subsections (A), (B), or (C) of the application note. Instead, he contends that the COVID-19 outbreak itself, "plus his heightened personal risk factors[,] constitutes the type of 'extraordinary and compelling' reasons justifying transfer to home confinement." Reply [177] at 2. Those personal risk factors, as articulated by Brooks, include his age (41) and race (African American).

4

Brooks says that "[t]he risk for severe illness from COVID-19 increases as a person gets older," and "African Americans have an infection rate approaching 5 times that of Caucasians." *Id.* at 3.

Starting with age, at age 41, Brooks is not at a significantly increased risk for severe illness.  While the "risk for severe illness from COVID-19 increases" as a person's age increases, "[t]he greatest risk for severe illness from COVID-19 is among those aged 85 and older.  Centers for Disease Control, Coronavirus Disease 2019, People at Increased Risk of Severe Illness, Older Adults, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Sept. 11, 2020).  The rate of hospitalizations per 100,000 individuals is 513.2 for those 85 and older, 84.6 for those between 40 and 49 years old, and 52.5 for those between the ages of 30 and 39.  *Id.*

As for the increased incidence of infection among African Americans, the article Brooks cites explains that "[l]ong-standing systemic health and social inequities have put many people from racial and ethnic minority groups at increased risk of getting sick and dying from COVID-19."  Centers for Disease Control, Coronavirus Disease 2019, Health Equity Considerations and Racial and Ethnic Minority Groups, available at https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fracial-ethnic-minorities.html (last updated July 20, 2020).  While certainly upsetting, that fact does not indicate a biological link that would make Brooks more susceptible to contracting COVID-19 than his white counterparts at FCI Beaumont Low.

So what's left is Brooks's general concern about contracting COVID-19.  The Court agrees with other courts that have considered similar arguments and concluded that "[g]eneral concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a

sentence." *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020).  Were such concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).  Brooks has not demonstrated the presence of extraordinary and compelling reasons to justify a sentence modification.

III.     Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Brooks's Motion [169] is denied.

**SO ORDERED AND ADJUDGED** this the 17th day of September, 2020.

                                                s/ *Daniel P. Jordan III*
                                                CHIEF UNITED STATES DISTRICT JUDGE